IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EUROFINS PHARMA US HOLDINGS, INC., and VIRALLIANCE, INC., <br><br> Plaintiffs, <br><br><br> BIOALLIANCE PHARMA SA, VIRALLIANCE SAS, and GILLES AVENARD, <br><br> Defendants. | ) ) ) ) ) ) ) ) C.A. No. 08-613-GMS ) ) ) ) ) ) ) |

**MEMORANDUM**

**I.     INTRODUCTION**

On September 23, 2008, the plaintiffs, Eurofins Pharma US Holdings, Inc. ("EPUSH") and Viralliance, Inc. ("VI") filed this diversity action against defendants Bioalliance Pharma SA ("Bioalliance"), Viralliance SAS ("Viralliance") and Gilles Avenard ("Avenard") for fraudulent inducement and breach of contract. (D.I. 1.) Presently before the court is the defendants' motion to dismiss this action for: (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) *forum non conveniens* pursuant to Fed. R. Civ. P. 12(b)(3); and for (3) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1] (D.I. 15.) For the reasons that follow, the court will grant the defendants' motion.

---

[1] Although all three defendants seek dismissal for lack of personal jurisdiction and *forum non conveniens*, only Viralliance and Avenard seek dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (D.I. 15.)

## II. FACTUAL BACKGROUND

EPUSH is a holding company incorporated in Delaware with its address in Des Moines, Iowa. (D.I. 1 ¶ 7.) VI is a Delaware corporation with its principal place of business in Des Moines, Iowa. (*Id.* at ¶ 8.) VI was created by and is the wholly-owned subsidiary of Eurofins Scientific, Inc. ("Eurofins"). (*Id.*) Eurofins is a Delaware corporation and an affiliate of EPUSH. (*Id.* at ¶¶ 7-8.) Bioalliance is a company formed under the laws of France with its principal place of business in Paris, France. (D.I. 20 at 3.) Viralliance is a wholly-owned subsidiary of Bioalliance, and is, likewise, an entity formed under the laws of France. (*Id.*) Avenard is a natural person who is both a citizen and resident of France. (*Id.*) In addition, he is the co-founder and chief operating officer of Bioalliance. (*Id.*) Avenard is also the former president and chief executive officer of Viralliance. (D.I. 20 at 3.) Avenard presently serves as a director on plaintiff VI's board of directors. (*Id.*)

The dispute in this case arises out of a sales agreement for the purchase of certain intellectual property assets (the "IP").[2] (D.I. 1 at ¶ 1.) The plaintiffs allege that the defendants breached this sales agreement by failing to disclose information concerning patent infringement claims previously asserted against the IP. (*Id.*) Specifically, the plaintiffs allege that on October 20, 2005, pursuant to a technology transfer and commercialization agreement (the "TTCA"), the plaintiffs purchased the IP from the defendant companies. (*Id.* at ¶ 2.) The plaintiffs further allege that, when they purchased the IP, the defendants assured them that there were no prior third-party claims against the IP. (*Id.*) In fact, the plaintiffs allege that, in executing the TTCA, Bioalliance and Viralliance specifically represented and warranted that "the IP was

---

[2] The "IP" at issue includes the "worldwide rights to certain patents, know-how and other intellectual property" used in the "development and administration of drugs used to treat HIV and Hepatitis B. (D.I. 1 at ¶¶ 1, 18.)

2

unencumbered and that [they were] unaware of any third-party's claim" against the IP. (*Id.*) The plaintiffs, however, claim that they subsequently learned for the first time in late 2007 that a third-party, Advanced Biological Laboratories, S.A. ("ABL"), had asserted infringement claims against the IP, and that the defendants were aware of this when they entered into the TTCA back in October 2005.

As a result, the complaint alleges that, among other things, the defendants breached the TTCA by failing to disclose information regarding ABL's infringement claims against the IP and by misrepresenting the fact that they were unaware of any third-party claims against the IP. (D.I. 1 at 3, 6.) In addition, the complaint alleges that Avenard breached his fiduciary duty as a director by failing to "properly inform VI" and disclose "information he possessed about the ABL claim" against the IP. (*Id.* at ¶ 6.)

### III. PROCEDURAL HISTORY

The plaintiffs filed the complaint in this action on September 23, 2008. (D.I. 1.) On October 28, 2008, the defendants filed a motion to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. (D.I. 15.) The parties completed briefing on the defendants' motion to dismiss on January 6, 2009. (D.I. 33.) On March 11, 2009, the defendants filed a motion to stay discovery in this matter pending the outcome of the court's ruling on their motion to dismiss. (D.I. 36.) On July 6, 2009, the court held a Rule 16 teleconference to discuss the defendants' motion to dismiss, as well as their motion to stay discovery. (D.I. 42-43.) During the teleconference, and after hearing brief argument on the motions from both sides, the court issued an oral order staying the case pending its ruling on the motion to dismiss.

## IV. PARTIES CONTENTIONS

In their motion, the defendants contend that this action should be dismissed for: (1) lack of personal jurisdiction, (2) *forum non conveniens*, and for (3) failure to state a claim. (D.I. 15.) They argue that this court lacks personal jurisdiction over both Bioalliance and Viralliance, in part, because these defendants are nonresidents that have "no contacts with the State of Delaware." (D.I. 16 at 2.) The defendants also argue that this court lacks personal jurisdiction over Avenard because, like Bioalliance and Viralliance, he too is a nonresident that "has no contacts with Delaware other than his status as a director of VI." (*Id.*) The defendants further argue that the claims against Avenard should be dismissed because they fail to "state a claim against him for breach of fiduciary duty." (*Id.*) Alternatively, the defendants argue that this action should be dismissed under the doctrine of *forum non conveniens*, in part, because "this forum is not convenient for any of the parties." (*Id.*)

In response, the plaintiffs contend that the defendants' motion to dismiss is without merit and should be denied.[3] (D.I. 25.) They contend that personal jurisdiction exists over all three defendants, and contrary to the defendants' assertions, the complaint adequately states a valid claim against Avenard for breach of fiduciary duty. (*Id.* at 4, 19.) The plaintiffs further contend that Delaware is the proper forum for resolving this dispute and there exists no basis for dismissal under the doctrine of *forum non conveniens*. (*Id.* at 9.)

## V. DISCUSSION

Here, after having considered the record in this case, the parties' submissions and arguments, and the applicable law, the court concludes that: (A) the claims against the defendants should be dismissed for lack of personal jurisdiction; (B) the breach of fiduciary duty

---

[3] In the alternative, the plaintiffs "request the opportunity to take jurisdictional discovery before a decision [on the defendants' motion] is rendered." (D.I. 25 at 4-5.)

4

claims against Avenard should be dismissed for failure to state a claim; and (C) this action should be dismissed under the doctrine of *forum non conveniens*. The court will, therefore, grant the defendants' motion.[4]

### A.     Personal Jurisdiction

When determining whether personal jurisdiction exists, courts must engage in a two-step analysis. *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 402 (D. Del. 2002). At step one, the court must decide whether the long-arm statute of the state in which the court sits authorizes jurisdiction.[5] *Id.* at 402-03. At step two, if jurisdiction is proper

---

[4] The court will also deny the plaintiffs' request to take jurisdictional discovery.

[5] The Delaware long-arm statute provides, in pertinent part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in the section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the

under the forum state's long-arm statute, the court must determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In order to satisfy step one of this analysis, the plaintiffs bear the burden of establishing that the defendants' activities fall within the ambit of the forum state's long-arm statute. *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992). To meet this burden, the plaintiffs must adduce facts which "establish with reasonable particularity" that jurisdiction over the defendants exists. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). In deciding the personal jurisdictional issue, the court must accept as true the allegations in the complaint. *Altech Industries, Inc. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53, 55 (D. Del. 1982). The court must also view any alleged jurisdictional facts in the light most favorable to the plaintiffs. *Jeffreys*, 784 F. Supp. at 151.

In order to satisfy step two of this analysis, the court must find that there exist sufficient "minimum contacts" between the defendants and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (citation omitted). In other words, the plaintiffs bear the burden of establishing with reasonable particularity that "sufficient minimum contacts" have occurred between the defendants and the forum state to support jurisdiction. *Provident National Bank v. California Federal Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff must show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities

---

        time the contract is made, unless the parties provide otherwise in writing.

10 *Del. C.* § 3104(c). Delaware's long-arm statute gives a court personal jurisdiction over any nonresident. *Id.* Also, under the statute, the term "person" includes any natural person, association, partnership, or corporation. *Id.*

within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108-09 (1987). Furthermore, unless these contacts are "continuous and systematic," they must be related to the plaintiffs' cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

### *1. Whether Personal Jurisdiction Exists Over Bioalliance and Viralliance*

Here, the plaintiffs contend that personal jurisdiction exists over Bioalliance and Viralliance pursuant to subsections (c)(1) through (c)(3) of the Delaware long-arm statute. Specifically, the plaintiffs claim that Bioalliance and Viralliance "engaged in several acts that touch Delaware . . . [and that] relate directly to the transaction and dispute." (D.I. 25 at 5.) In particular, they assert that the following "acts" authorize the exercise of personal jurisdiction over the defendants under Delaware's long-arm statute: (1) "agreeing that a Delaware corporation [would] be the vehicle for the business, then nominating a board member to such vehicle so as to be able to participate in its management"; (2) committing "torts" in connection with the TTCA that affect intellectual property owned by a Delaware corporation; (3) entering into an ancillary contract that contains a Delaware forum selection clause; (4) entering into a contract governed by Delaware law; and (5) unsuccessfully negotiating for a France forum selection clause in the TTCA. (D.I. 25 at 6-8.)

The court, however, is not persuaded that any of these acts authorize jurisdiction. For one thing, merely being a party to a contract with a Delaware entity alone is insufficient to confer personal jurisdiction under the Delaware long-arm statute. While "a single act related to the state" can be the basis of personal jurisdiction, the single act of being a party to a contract signed in Delaware between a Delaware corporation and a nonresident is by itself insufficient under §

3104(c)(1). *Blue Ball Properties, Inc. v. McClain*, 658 F. Supp. 1310, 1316 (D. Del. 1987). Similarly, merely being a foreign parent of a Delaware subsidiary without more is, likewise, insufficient to confer personal jurisdiction over a nonresident defendant under the Delaware long-arm statute. *See Monsanto Company v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006) (holding that "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent") (quoting *ACE & Co. V. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del. 2001)). Thus, the court does not find that the acts alleged in the complaint authorize the exercise of personal jurisdiction over these defendants.

The court is also not convinced that the plaintiffs met their burden of demonstrating that the defendants' activities fall within the "ambit" of Delaware's long-arm statute. *See Jeffreys*, 784 F. Supp. at 151. The plaintiffs point to no evidence in the record to show that either of these defendants committed any acts in Delaware. In fact, they do not allege that these defendants signed the contract at issue in Delaware, or that these defendants actually committed any torts in Delaware. The plaintiffs also do not even suggest that either Bioalliance or Viralliance performed, or contracted to perform, any services in Delaware. Viewing the allegations of the complaint in the plaintiffs' favor, as it must, the court is not persuaded that the plaintiffs have met their burden. As alleged, these facts simply do not "establish with reasonable particularity" that jurisdiction over these defendants exists. *ICT Pharms.*, 147 F. Supp. 2d at 270-71.

Additionally, the court is unpersuaded by the plaintiffs' argument as to the existence and significance of an ancillary contract with a Delaware forum selection clause. The plaintiffs claim that this ancillary contract establishes personal jurisdiction over these defendants in Delaware. The court does not agree. To the contrary, it strikes the court that, although the

ancillary contract contains a Delaware forum selection clause, neither Bioalliance nor Viralliance are actual parties to that contract. In addition, Eurofins, which is a party to the ancillary contract, is not a party to this action. Thus, the court is not convinced that the ancillary contract is binding on any of the defendants in this action; or that any of the parties to the ancillary contract have standing to enforce any of its provisions against any of the defendants in this case. Moreover, even if the ancillary contract were binding, the fact that it contains a Delaware forum selection clause, without more, is not dispositive on the issue of personal jurisdiction. *Cf. Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (noting that the mere fact that a dispute is governed by Delaware law is not a dispositive factor on the issue of personal jurisdiction). In other words, this ancillary agreement by itself does not settle the issue of personal jurisdiction in this case.

The court is also unimpressed by the fact that the parties unsuccessfully negotiated for a France or New York forum selection clause in the TTCA. It is not clear whether this fact is even relevant; much less an appropriate factor that this court should consider in determining whether Delaware's long-arm statute authorizes jurisdiction. In addition, as the defendants correctly note, the plaintiffs cite no case law to support any such proposition. The court is, therefore, not moved by the plaintiffs' arguments in this regard.

Because the court does not find that Bioalliance's and Viralliance's activities fall within the ambit of the Delaware long-arm statute, the court must grant the motion to dismiss for lack of personal jurisdiction as to each of these two defendants.[6]

---

[6] In addition, because personal jurisdiction over these defendants is not authorized by the Delaware long-arm statute, the court need not address the constitutional dimension of the jurisdictional question. *See, e.g., Intel Corp. v. Silicon Storage Tech.*, 20 F. Supp. 2d 690, 699 (D. Del. 1998) (noting that because the "Delaware long-arm statute [does not] authorize this court to exercise jurisdiction over [the defendant] . . . the court need not analyze whether exercising such jurisdiction would comport with the Due Process Clause."). For similar reasons, the court also need not address the Rule 12(b)(6) claim raised by Viralliance.

### *2. Whether Personal Jurisdiction Exists Over Avenard*

Pursuant to 10 *Del. C.* § 3114, the plaintiffs contend that personal jurisdiction over Avenard exists under Delaware's long-arm statute because Avenard breached his fiduciary duty as a director of a Delaware corporation. (D.I. 1 at ¶ 6.) Specifically, the plaintiffs contend that Avenard breached this duty by failing to disclose information concerning ABL's infringement claims against the IP. (*Id.*) The defendants, however, contend that Avenard is not subject to personal jurisdiction in Delaware because his only connection to Delaware is the fact that he is a director of a Delaware entity. (D.I. 16 at 1-2.) The defendants further contend that personal jurisdiction over Avenard is lacking because the complaint fails to state a valid claim against him for breach of fiduciary duty. (*Id.*)

Because the plaintiffs rely on 10 *Del. C.* § 3114 as the only basis for asserting personal jurisdiction over Avenard, in order to avoid dismissal under Rule 12(b)(6), the complaint must state a valid claim against Avenard for breach of fiduciary duty. *North Am. Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 94 (Del. 2007). When considering a motion to dismiss, the court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the nonmoving party. *Neitzke v. Williams*, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir. 1994). The court, however, is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When they are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Here, the court concludes that personal jurisdiction over Avenard is lacking. As the defendants correctly point out, Avenard has essentially no contacts with Delaware. (D.I. 16 at 2.) It is undisputed that Avenard has not performed any work, provided any services, nor participated in any activities in Delaware. It is also undisputed that Avenard's only alleged contact with Delaware is solely as a director of VI. Nonetheless, the court is not convinced that the complaint states a valid claim against Avenard for breach of fiduciary duty. (D.I. 16 at 2.)

As the plaintiffs correctly note, under Delaware law, a director's fiduciary duty of loyalty includes a duty to disclose. *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1184 (Del. Ch. 2006). This duty to disclose, however, "is not a general duty to disclose everything the director knows about transactions in which the corporation is involved . . . [but rather those] circumstances in which the director is personally engaged in transactions harmful to that the corporation, but beneficial to the director." *Id.* Moreover, in order to establish that a defendant has breached this duty to disclose, the plaintiffs must show that the defendant had "clear knowledge of the information at issue." *Id.* at 1185.

In this case, the plaintiffs have not made the requisite showing. The plaintiffs do not allege that Avenard personally engaged in any transactions that were either harmful to VI, or beneficial to him. The plaintiffs also do not allege that Avenard cast any votes as a director of VI in a manner that constituted a breach of fiduciary duty. Nor do they allege that Avenard committed or participated in any scheme of active wrongdoing against VI. The plaintiffs also fail to allege that Avenard either misappropriated funds from VI, diverted a corporate opportunity from VI, or breached any corporate contract with VI during his tenure as a director.

As pled, the court is not persuaded that the complaint states a valid claim for breach of any fiduciary duty, including any duty to disclose information to VI. Accordingly, the defendants' motion to dismiss the claims against Avenard is granted.

### B. *Forum Non Conveniens*

A court may dismiss a case based under the doctrine of *forum non conveniens* "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] appropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quotation omitted). Ordinarily, dismissal will be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. *Id.* at 249. If a foreign country is selected as the alternative forum, the entire case and all of the parties must be deemed to come within the jurisdiction. *Id.* at 254.

In determining whether to dismiss a case on *forum non conveniens* grounds, the court must consider certain factors, which include private interests affecting the convenience of the litigants, along with public interests affecting the convenience of the chosen forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). The relevant private interest factors include the: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 508. The relevant public interest factors involve: (1) administrative difficulties flowing from court congestion; (2)

local interest in having localized controversies decided at home; (3) avoidance of unnecessary problems in conflict of laws, or in application of foreign law; (4) unfairness of burdening citizens with jury duty in an unrelated forum; and (5) interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action. *Id.* at 509. In addition, at the outset of a *forum non conveniens* analysis, the court must determine whether there exists an alternative forum. *Gilbert*, 330 U.S. at 506-507.

Considering the facts and circumstances presented in this case, the court concludes that dismissal on the grounds of *forum non conveniens* is appropriate. For one thing, there exists an appropriate alternative forum in France. As the defendants correctly point out, the defendants are all amenable to process in France. Moreover, all of the defendants indicate that they "will not contest personal jurisdiction" in France. (D.I. 16 at 15.) In addition, all of the relevant private and public interests also favor litigation in France. On balance, these factors point strongly in favor of France as the appropriate forum. These factors include, among other things, the fact that: (1) the initial offer for the sale of the IP at issue in this litigation was extended in France by a French entity; (2) the contract at issue in this action was finalized and executed in France; (3) all of the sources of proof are located in France, including documents written in French and key witnesses; and (4) the third-party at the center of this contract dispute conducts business in France. (D.I. 16 at 15.) In light of the balancing of these factors, and other relevant considerations, the court concludes that the plaintiffs' choice of a Delaware forum is far outweighed by the burdens that a Delaware forum would impose on these defendants. Indeed, it would be much less burdensome to all involved to resolve this dispute in France. The court will, therefore, grant the defendants' motion to dismiss on the grounds of *forum non conveniens*.

C.  **Jurisdictional Discovery**

Finally, regarding the plaintiffs' request to take jurisdictional discovery, the court is not persuaded that such discovery is warranted, or that it would serve any additional purpose in light of the court's other rulings in this case.[7] The plaintiffs' request is, therefore, denied.

Dated: September 17, 2009

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] "As a general rule, courts are wary of allowing discovery absent some showing of personal jurisdictional facts if a defendant has challenged plaintiff's assertion of personal jurisdiction over him, because basic fact-finding should precede discovery." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations omitted). "The court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id.* at 475. Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997). Here, the court is not convinced that discovery would elicit any facts or evidence that would render these defendants "amenable to suit in this forum." *Toys "R" Us, Inc.*, 318 F.3d at 475.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EUROFINS PHARMA US HOLDINGS, INC., and VIRALLIANCE, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| | ) C.A. No. 08-613-GMS ) |
| BIOALLIANCE PHARMA SA, VIRALLIANCE SAS, and GILLES AVENARD, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendants' motion to dismiss (D.I. 15) is GRANTED.

2. The plaintiffs' request to take jurisdictional discovery is DENIED.

3. The clerk is directed to close this case.

Dated: September 1⁄, 2009

_____
CHIEF UNITED STATES DISTRICT JUDGE